# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRESCENZO 1, L.P.,<br><br>                    Plaintiff,<br><br>v.<br><br>DEUTCHE BANK NATIONAL TRUST COMPANY et al.,<br><br>                    Defendant. | Case No.: 3:17-CV-1018-CAB-JLB<br><br>**ORDER GRANTING MOTION TO DISMISS RICO CLAIMS AND REMANDING REMAINING CLAIMS TO STATE COURT**<br><br>[Doc. No. 10] |

On May 17, 2017, Defendants removed this case from state court based on federal question jurisdiction because of two claims under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"). In response to a motion to dismiss, Plaintiff filed its first amended complaint ("FAC") in this Court. Defendants now move to dismiss the FAC in its entirety. The motion has been fully briefed and the Court deems it suitable for submission without oral argument. Because the FAC fails state a RICO claim, and because any amendment to the RICO claim would be futile, the motion to dismiss is granted with prejudice as to the two RICO claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and therefore remands this case to state court.

### I. Allegations in the FAC

Louis A. Crescenzo ("LAC") executed a promissory note and deed of trust[1] (collectively, the "Loan") with Metrocities Mortgage LLC ("Metrocities") in 2004 for a property located at 842 Felspar Street, San Diego, California (the "Property"). LAC then transferred his interest in the property to Louis A. Crescenzo Trust (the "Trust") subject to the deed of trust and promissory note with Metrocities. Initially, IndyMac Mortgage Services ("Indymac") serviced the Loan on behalf of Metrocities. During this period, neither Indymac nor Metrocities required LAC to contribute to an escrow account for property taxes, insurance and other property-related expenses. Instead, LAC paid property taxes directly to the San Diego County Treasurer and insurance directly to Farmer's Insurance.

In 2011, LAC died. Pursuant to the Trust, LAC's ownership interest in the Property passed to Plaintiff, Crescenzo 1, L.P. The Trustee of the Trust notified Metrocities and Indymac that Plaintiff was the new owner of the Property. At this point, Plaintiff continued to make payments on the Loan with Metrocities and to pay the property taxes and insurance directly to the County and Farmer's Insurance, respectively. Plaintiff used the Property for commercial purposes, renting multiple units thereon to tenants.

At some point after Plaintiff became the owner of the Property, the Loan was transferred to Defendant Deutsche Bank National Trust Company ("DBNTC"). In October 2013, Defendant Ocwen Loan Servicing, LLC ("Ocwen") took over servicing the Loan

---

[1] With their motion to dismiss, Defendants ask the Court to take judicial notice of the deed of trust and notice of default, which were not attached to the FAC. Plaintiff did not file an opposition to Defendants' request for judicial notice and cites to the deed of trust in its opposition. In light of Plaintiff's lack of opposition, and because courts frequently take judicial notice of documents like a deed of trust in a dispute such as this, Defendants' request for judicial notice is granted. *See Saterbak v. Nat'l Default Servicing Corp.,* No. 15CV956-WQH-BGS, 2016 WL 4430922, at *4 (S.D. Cal. Aug. 22, 2016) (taking judicial notice of publicly recorded deed of trust and notice of default, noting they "are not subject to reasonable dispute over their authenticity").

from Indymac. Ocwen began requiring Plaintiff[2] to pay into an escrow account for property taxes and insurance payments.[3] From October 2013 to May 2014, these escrow payments equaled $498.93 per month, and from June 2014 to May 2015, the payments equaled $96.26 per month. Plaintiff paid these escrow payments with the Loan principal and interest payments until May 2015. However, according to the FAC, Ocwen never made any property tax or insurance payments from the escrow account. Instead, Plaintiff continued to pay property taxes and insurance directly to the County Treasurer and Farmer's Insurance, respectively.

Beginning in June 2015, the escrow portion of the Loan payment increased to $1,193.37 per month. Plaintiff disputed this escrow payment and the existence of the escrow account itself with Ocwen, arguing that the account and escrow payments were not authorized because Plaintiff had already paid the property taxes and insurance for 2015 directly. At this point, Plaintiff continued to make payments equal to the principal and interest owed on the Loan, but did not pay the escrow amount. Ocwen then began assessing late fees and interest. While this was happening, Ocwen refused to communicate with Plaintiff concerning the Loan or the escrow account until Plaintiff provided evidence that it owned the Property. Ocwen demanded LAC's will and probate court documents reflecting the transfer of the Property from LAC to Plaintiff, but because the Property was conveyed through the Trust, no such documents existed. Plaintiff provided Ocwen with

---

[2] The FAC alleges that neither DBNTC nor Ocwen ever recognized Plaintiff as the successor in interest to LAC, but also alleges that these defendants required Plaintiff to make the payments on the Loan and to the escrow account. For the purposes of the instant motion, the Court assumes as true the allegation that Defendants actually required Plaintiff to make such payments, notwithstanding that Plaintiff is not identified as a party on the Loan documents and that Plaintiff alleges that Defendants never recognized Plaintiff as having assumed any rights or obligations under those documents.

[3] The FAC labels these escrow payments as "fees," implying that the payments were intended to compensate Defendants as opposed to go into an escrow account that Defendants would use to pay property taxes and insurance on the Property. Because the FAC also concedes that Ocwen designated these payments as being for property taxes and insurance, the Court declines to use Plaintiff's "fee" label.

the Trust documents, but Ocwen continued in its refusal to communicate with Plaintiff about the dispute over the escrow payment and late fees.

Plaintiff continued making monthly principal and interest payments, but not escrow payments, on the Loan through May 2016. Ocwen continued to issue monthly delinquency notices and notices of default on the Loan. In May 2016, Ocwen again required escrow payments for property taxes and insurance, and Plaintiff again disputed these payments because it had already paid the 2016 property taxes and insurance on the Property directly. Plaintiff continued to make payments equal to the principal and interest due on the Loan from June 2016 through April 2017, but Ocwen returned these payments without depositing them. Plaintiff made another property tax payment to the County Treasurer on November 3, 2016. At no point did Ocwen make any property tax or insurance payments on the Property.

On October 18, 2016, Defendant Western Progressive, LLC ("Western") recorded a Notice of Default ("NOD"). The NOD stated that Ocwen had "exercised due diligence to contact the borrower pursuant to California Civil Code 2923.55(f) to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.' Thirty (30) days, or more, have passed since these due diligence requirements were satisfied." [Doc. No. 5-2 at 25.]

In January 2017, Plaintiff received a notice of trustee's sale from Western, listing a sale date of March 7, 2017. On March 1, 2017, Plaintiff filed the original complaint in state court. The complaint asserted two RICO claims along with state law claims for wrongful foreclosure, violation of California Civil Code § 2923.5, slander of title, breach of contract, and unfair competition in violation of California Civil Code § 17200. On May 17, 2017, Defendants removed the complaint to this Court and subsequently filed a motion to dismiss. In response, Plaintiff filed the FAC asserting the same claims. Defendants then filed the instant motion to dismiss the FAC.

II. **Legal Standards**

In most cases, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

Plaintiff, however, argues that its RICO claims are based on predicate acts of mail fraud. Therefore, the RICO claims are subject to the heightened pleading standard under Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004) ("Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims."). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and ellipses omitted). "Averments of fraud must be accompanied by the *who, what, when, where, and how* of the misconduct charged." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) (emphasis added; internal quotation marks omitted). Thus, when a plaintiff claims that a statement is false or

misleading, "[t]he plaintiff must set forth *what* is false or misleading about a statement, and *why* it is false." *Vess*, 317 F.3d at 1106 (*emphasis* added; internal quotation marks omitted).

### III. Discussion

The FAC asserts one RICO claim under 18 U.S.C. § 1962(c) and one claim under 18 U.S.C. § 1962(d). To state a RICO claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Meanwhile, § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). If Plaintiff's claim under § 1962(c) fails to state a claim, the claim under § 1962(d) fails as well because Plaintiff "cannot claim that a conspiracy to violate RICO existed if [it does] not adequately plead a substantive violation of RICO." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Defendants' motion primarily focuses on the last two elements – predicate acts and injury.

Plaintiff argues that the FAC sufficiently alleges predicate acts of mail fraud and extortion. The FAC makes no mention of the mail fraud statute, but even if it did, the FAC does not allege any predicate acts sufficient to constitute a RICO claim. To plead "a violation of the mail fraud statute (18 U.S.C. § 1341) as a predicate act under a RICO scheme, plaintiffs must allege that (1) defendants devised a scheme or artifice to defraud, (2) defendants used the mails in furtherance of the scheme, and (3) defendants did so with the specific intent to deceive or defraud." *Saterbak*, 2016 WL 4430922, at *13. The FAC does not allege any specific facts about a scheme or intent to defraud by Defendants.

The primary, if not only dispute, articulated in the FAC is whether Defendants were allowed to require Plaintiff to make payments into an escrow account for property taxes and insurance on the Property in addition to paying principal and interest on the Loan. The FAC characterizes these escrow requirements as "unlawful," "unauthorized," and "fraudulent," but the FAC does not allege that Ocwen disguised these escrow payments as

something else in an effort to defraud Plaintiff. Rather, the FAC admits that Defendants designated payments to the escrow account as being for payment of insurance and property taxes as allowed by the deed of trust. [Doc. No. 8 at ¶¶ 165, 169.] Although the FAC describes this designation as "false" or "a pretext," the only reason it alleges for why it was false is that Defendants never made any property tax or insurance payments on the Property. Yet at the same time, the FAC alleges that Plaintiff was making these property tax and insurance payments directly meaning that no such payments were owed.

Indeed, Plaintiff does not even dispute that the deed of trust required LAC, as the borrower, to pay for "escrow items," including for taxes and insurance, unless the borrower obtains a written waiver from the lender. [Doc. No. 5-2 at 7; Doc. No. 14 at 6-7.] Instead, Plaintiff argues that the escrow provision of the deed of trust was implicitly waived because Plaintiff or its predecessor had been paying property taxes and insurance directly for nine years. [Doc. No. 14 at 6-7.] Even if Plaintiff is somehow correct that, notwithstanding the deed of trust's requirement of a written waiver, the escrow requirement was waived by the actions of Ocwen's predecessor, Ocwen's reinstatement of the escrow requirement and institution of foreclosure proceedings when Plaintiff did not make the full Loan payments at most would constitute a breach of contract, not fraud or extortion.

Likewise, Plaintiff's argument that Defendants "concealed" that they never made tax payments out of the escrow account is inconsistent with the factual allegations in the FAC. In particular, the FAC alleges that Plaintiff had made the insurance tax payments directly meaning that there were no tax or insurance payments to be made. That Plaintiff unilaterally decided to pay the property taxes and insurance directly instead of paying those amounts into the escrow account and does not mean that Defendants are liable for fraud. More importantly, there is no allegation that the escrow portion of the Loan payments was concealed or misrepresented on any billing statements, or that Defendants ever stated that

they had made a property tax or insurance payment from the escrow account.[4]  Indeed, the FAC makes clear that Plaintiff was aware of the escrow requirements and simply disputes that Defendants were allowed to include them in the amount owed for the monthly Loan payments.  A dispute as to Defendants' right to require Plaintiff to contribute to an escrow account does not allow for the maintenance of a RICO claim even if Plaintiff's position is correct.[5]  *See Koenig v. Bank of Am.*, N.A., No. 1:13-CV-0693 AWI BAM, 2016 WL 8731110, at *4 (E.D. Cal. Mar. 18, 2016) (noting that "[i]n other cases involving general statements that defendants had improperly enforced a deed of trust due to lack of authority or improper transfer, courts have found that these allegations were insufficient to constitute racketeering," and dismissing RICO claim with prejudice).[6]

To the extent Plaintiff's RICO claims are premised on a predicate act of extortion, they still fail to state a claim.  The FAC does not allege how any of the mortgage statements,

---

[4] The FAC alleges that Plaintiff had initially paid some of the escrow amounts "believing that the fees were expenses advanced by Defendant Ocwen or DBNTC related to loan servicing of the property" [Doc. No. 8 at ¶ 50], but it does not allege any statement from Defendants that caused it to have this belief.  Rather, the FAC alleges that Defendants added the escrow charges for payment of real estate taxes and insurance [*Id.* at ¶¶ 68, 102], and designated the escrow payments as being for insurance and taxes.  [*Id.* at ¶ 165.] Moreover, the FAC alleges that Plaintiff disputed the escrow payments "for the payment of real estate taxes" [*Id.* at ¶ 73], indicating that Plaintiff was fully aware of Defendants' reasons for including escrow amounts in the Loan payments.  Plaintiff merely disagreed with Defendants' position.

[5] In addition, the FAC fails to allege any injury to Plaintiff that was caused by Defendants' failure to pay property taxes and insurance out of the escrow account because Plaintiff made those payments directly. Any injury Plaintiff could have suffered would not be a RICO injury because it would not have been proximately caused by the mail fraud that Plaintiff argues constitutes the predicate acts for its RICO claims.  *See generally Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) ("To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate cause.") (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, (1992)); *see also Zander v. ACE Mortg. Funding LLC*, No. EDCV 11-1370-CAS, 2012 WL 601896, at *3 (C.D. Cal. Feb. 23, 2012) ("This fifth element has two subparts: the plaintiff must show that the injury was proximately caused by the conduct and that he has suffered a concrete financial loss.").

[6] The FAC alleges that Defendants "concealed the 'escrow' fees as if Defendants were entitled to the monies demanded." [Doc. No. ¶ 158.]  This is akin to alleging that Defendants concealed that they were breaching the deed of trust.  An alleged "failure to concede breach of contract liability does not create RICO liability." *Vega v. Ocwen Fin. Corp.*, No. 2:14-CV-04408-ODW, 2015 WL 1383241, at *12 (C.D. Cal. Mar. 24, 2015).

delinquency notices, and foreclosure activity were anything more than normal business conduct. "[C]laims that defendants threatened and initiated foreclosure are nothing more than conduct undertaken in the ordinary course of business or litigation and cannot be fairly characterized as extortion that is independently wrongful under RICO." *Zander v. ACE Mortg. Funding LLC*, No. EDCV 11-1370-CAS, 2012 WL 601896, at *3 (C.D. Cal. Feb. 23, 2012) (internal brackets, quotation marks, and ellipses omitted) (citing *Book v. Morg. Elec. Registration Sys.*, 608 F.Supp. 2d 277, 282 (D. Conn. 2009)).

"[C]ourts routinely dismiss with prejudice RICO claims predicated on a residential foreclosure proceeding on the ground that foreclosure proceedings, without more, do not give rise to a RICO claim." *Lee v. Bank of New York Mellon*, No. 16-CV-05094-JST, 2016 WL 8729924, at *9 (N.D. Cal. Dec. 9, 2016); *see, e.g., Glaser v. Nationstar Mortg., LLC*, No. 16-CV-07245-LB, 2017 WL 1861850, at *11 (N.D. Cal. May 9, 2017) (dismissing with prejudice RICO claim based on activity leading up to and including foreclosure); *Saterbak*, 2016 WL 4430922, at *13-14 (same). Thus, the two cases on which Plaintiff relies are the exception and are distinguishable from the facts here. Both *Bias v. Wells Fargo*, 942 F.Supp. 2d 915 (N.D. Cal. 2013), and *Weiner v. Ocwen Financial Corp.*, No. 2:14-cv-2597-MCE-DAD, 2015 WL 4599427 (E.D. Cal. Jul. 29, 2015), were class actions alleging that the defendants had engaged in enterprises pursuant to which they fraudulently marked up fees charged by third party vendors and passed those fees on to the borrowers to make a profit. *Bias*, 942 F.Supp. 2d at 924; *Weiner*, 2015 WL 4599427, at *10. The FAC here does not allege any misrepresentations about or fraudulent marking-up of any fees that appeared on the mortgage statements for the loan. Neither *Bias* nor *Weiner* support Plaintiff's position here.

Ultimately, Plaintiff "attempt[s] to convert [Defendants'] straightforward foreclosure proceedings into a pattern of racketeering activity." *Glaser*, 2017 WL 1861850, at *11. Although the Court need not address whether any of the state law claims

can survive a motion to dismiss, this appears to be, at most,[7] a breach of contract case, and "a breach of contract claim . . . cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal." *Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010). Plaintiff has already amended the complaint once in response to a motion to dismiss, and any subsequent amendment would be futile with respect to any RICO claim. Accordingly, Plaintiff's RICO claims are dismissed with prejudice.

### IV. State Law Claims

"A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010)) (quoting 28 U.S.C. § 1367(c)(3)). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (internal brackets and citation omitted). Here, the sole bases for removal was federal question jurisdiction, and the RICO claims were the only federal claims in this case. Accordingly, having dismissed the RICO claims, and in consideration of the early stage of these proceedings, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See generally Banayan v. OneWest Bank F.S.B.*, No. 11CV0092-LAB WVG, 2012 WL 896206, at *2 (S.D. Cal. Mar. 14, 2012) ("There is no alleged basis for diversity jurisdiction in this case, and the Court is well within its discretion to dismiss a case for lack of jurisdiction when all federal claims have been dismissed and only state law claims over which it has supplemental jurisdiction remain."); *Keen v. Am. Home Mortg. Servicing, Inc.*, No. CIV. S-09-1026 FCD/KJM, 2010

---

[7] The Court does not address Defendants' arguments that Plaintiff is not a party to the deed of trust and therefore cannot even maintain a breach of contract claim.

WL 624306, at *1 (E.D. Cal. Feb. 18, 2010) ("[W]hen federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction.").

### V.     Conclusion

In light of the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' motion to dismiss is **GRANTED** with respect to the two RICO claims asserted in the FAC;
2. Claims 1 and 2 from the FAC are **DISMISSED WITH PREJUDICE**; and,
3. The remaining claims are **REMANDED** to state court.

It is **SO ORDERED**.

Dated: August 30, 2017

Hon. Cathy Ann Bencivengo
United States District Judge